UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSEPH JOHN NELSON,

                Plaintiff,                Case No. 1:10-cv-1010

v.                                          Honorable Robert Holmes Bell

JAMES ATTERBERRY et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## **Discussion**

    I.        Factual allegations

Plaintiff Joseph John Nelson presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Pugsley Correctional Facility (MPF), though some of the actions he complains of occurred while he was housed at the Parnall Correctional Facility (SMT). Plaintiff pleaded nolo contendere in the Roscommon County Circuit Court to one count of attempted assault with intent to commit sexual conduct, MICH. COMP. LAWS § 750.520g(1), involving his minor daughter. On October 31, 2006, Plaintiff was sentenced to a prison term of 23 months to 5 years. Plaintiff sues the following Defendants: Michigan Parole Board members James Atterberry, Sharee Booker, David Kleinhardt, Jodi DeAngelo, and Sonia Warchock; Michigan Parole Board Chairperson Barbara Sampson; MDOC Director Patricia Caruso; Michigan Governor Jennifer Granholm; MDOC parole and probation employee John Fuller; SMT employees Bobby Copeland and Christine M. Reitzel; MPF employee Brian Majerczyk; and Pine River Correctional Facility employee Lora Burke.

        Plaintiff alleges that he was coerced into pleading nolo contendere to the offense of which he was convicted. He denies that he committed any criminal sexual conduct offense and maintains that the victim was lying. Plaintiff contends that Defendants Caruso, Granholm and Sampson are jointly responsible for creating and implementing parole policies, including the requirement that sexual misconduct offenders must complete the Sexual Offender Therapy (SOT) program, which requires that a participant admit full responsibility for his offense. On October 25, 2006, Defendant Fuller completed a presentence investigation report, which included an extensive history of Plaintiff orally and anally assaulting his daughter from the time she was 10 until she was

16. Defendant Copeland allegedly relied upon that false history in producing Plaintiff's Parole Eligibility/Lifer Review Report on August 8, 2007. On August 27, 2007, Plaintiff attempted to enlist in the SOT program in order to qualify for release on parole. Defendant Reitzel denied Plaintiff admission to the program, however, because Plaintiff did not accept full responsibility for his crime. On October 17, 2007, Plaintiff's Parole Guidelines Scoresheet indicated that he scored an average probability of parole. Since that time, Plaintiff has had three parole hearings. Defendants Atterberry and Booker denied him parole on November 13, 2007, and continued his next parole hearing for 24 months. Plaintiff alleges that the decision rested on his denial of guilt and a false claim that Plaintiff blamed his criminal history on substance abuse.

Defendant Burke published a second parole eligibility report on July 7, 2009, which falsely stated that Plaintiff had been terminated from SOT for refusing to participate in group. On August 19, 2009, Plaintiff again was scored with an average probability of parole. On August 25, 2009, Defendant Burke completed a COMPAS Narrative Assessment Summary, in which he falsely reported that Plaintiff's offense is a violent felony and that Plaintiff blamed the victim and refused to admit his guilt. Defendants Warchock and Kleinhardt denied Plaintiff parole on September 16, 2009. The notice of decision listed Plaintiff's denial of the offense and falsely stated that Plaintiff was serving a prison term because he failed to register under the Sexual Offender Act.

On June 4, 2010, Plaintiff received a third parole eligibility report, which indicated that Plaintiff had excellent behavior and work reports. A new parole guidelines scoresheet issued June 8, 2010 listed Plaintiff as having a high probability of parole. On July 1, 2010, Plaintiff sent a kite to Defendant Majerczyk, asking to be admitted into the SOT program in order to qualify for parole. Plaintiff agreed to abide by the rules of the program, but he again denied responsibility for

the crime. On July 14, 2010, Defendant Majerczyk denied Plaintiff's request to participate in SOT, because it made no sense for Plaintiff to participate in a group for 44 sessions when he continued to claim that he was innocent of sexually deviant behavior. Plaintiff responded to Defendant Majerczyk's note, indicating that the Criminal Law Section of the State Bar of Michigan had taken the position that an assertion of innocence should not, standing alone, be a basis for denying parole. Plaintiff also claimed that he had a First Amendment interest in asserting his innocence and a Fifth Amendment right not to incriminate himself. On September 2, 2010, Defendants Kleinhardt and DeAngelo signed the notice of decision denying parole, again noting that Plaintiff continued to deny the offense.

In his complaint, Plaintiff raises claims under the First, Fifth and Fourteenth Amendments. For relief, he seeks declaratory relief, together with an injunction eliminating the policy and directing Defendants either to admit Plaintiff immediately into SOT or exempt him from the requirement without consequence to his release on parole. He also seeks compensatory and punitive damages.

　　　　II.　　Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A challenge to the fact or duration of confinement ordinarily should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a

prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (citation omitted); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original). Plaintiff does not seek release from prison; rather, he requests admission to the SOT program and a new parole hearing. As a consequence, under *Wilkinson*, his success in the action would not necessarily demonstrate the invalidity of his continued confinement, so his action does not appear to be *Heck*-barred. Nevertheless, assuming that Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth herein.

**A.   Due Process**

Plaintiff claims that Defendants violated his due process rights by relying on false information in denying his parole and by creating a policy that prevents him from being considered for parole unless he falsely admits his guilt. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because

he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See, e.g. Foster v. Booker*, 595 F.3d 353, 368 (6th Cir. 2010); *Ward v. Stegall*, No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar. 24, 2004). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Furthermore, the Sixth Circuit has held that the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of

parole." *Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). As stated by the Supreme Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board. *See Sweeton*, 27 F.3d at 1165 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board"). Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate. *Carnes*, 76 F. App'x at 80.

Until Plaintiff has served his five-year maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

Plaintiff's related allegation that Defendants relied on false information to deny his parole also fails to state a claim. Because Plaintiff has no liberty interest in being paroled, he cannot show that the false information was relied upon to a constitutionally-significant degree. *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the

information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Therefore, Plaintiff fails to state a claim for a violation of his due process rights arising from the denial of his parole.

Moreover, to the extent that Plaintiff intends to allege that his due process rights were violated when he was denied admission into the SOT program, he also fails to state a claim. Plaintiff does not have a federally cognizable liberty interest in participating in any rehabilitative program. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no

constitutional right to rehabilitative services). Because Plaintiff has no liberty interest in the rehabilitative program, his due process rights were not violated by Defendants' refusal to admit him into the SOT program.

**B.     Fifth Amendment**

Plaintiff next alleges that his constitutional right not to incriminate himself was violated and continues to be violated when he is denied parole as a result of his refusal to admit guilt to the SOT program and the parole board. This assertion is without merit.

It is well-settled that the Fifth Amendment right against self-incrimination is not implicated by the alleged pressure on a prisoner to admit, in order to improve his chances for parole, that he committed the crime for which he is incarcerated. *See Hawkins v. Morse,* No. 98-2062, 1999 WL 1023780, at *2 (6th Cir. Nov. 4, 1999) (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 285-88 (1998)). *See also Rice v. Mich. Parole Bd.*, No. 1:05-cv-549, 2005 WL 2297463, at *3-4 (W.D. Mich. Sept. 21, 2005) (Fifth Amendment extends only to proceedings in which answers might incriminate the individual in *future* criminal proceedings; therefore refusal to admit to crimes of which prisoner had already been convicted did not implicate Fifth Amendment) (emphasis in original). Therefore, the parole board's consideration of Plaintiff's denial of guilt for the crime of which he already was convicted did not violate his Fifth Amendment rights.

**C.     First Amendment**

Plaintiff also claims that his First Amendment rights have been violated because he was required to say that he is guilty of the offense for which he was convicted in order to improve his chance of parole. In *Hawkins*, 1999 WL 1023780, at *2, the Sixth Circuit affirmed the dismissal of a prisoner's similar First Amendment claim, stating that "the parole board's consideration of a

prisoner's willingness to accept responsibility for committing a crime does not force [the prisoner] to admit his guilt. [The prisoner] is free to maintain his innocence." *Id.*; *see also Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *1 (6th Cir. Sept. 19, 2000) (reaffirming the decision in *Hawkins v. Morse*, 1999 WL 1023780, at *2). The Third Circuit recently addressed the issue in more detail. In *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010), the court acknowledged that the First Amendment protects both the right to speak freely and the right not to speak at all. *Id.* (citing *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). The Amendment ordinarily prevents the state from "inquir[ing] about a man's views or associations solely for the purpose of withholding a right or benefit of what he believes." *Newman*, 617 F.3d at 781. As the Supreme Court repeatedly has recognized, however, incarceration necessarily "imposes restrictions on a prisoner's rights." *Id.* (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). A prisoner retains only those First Amendment rights that are not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The *Newman* court held that the prisoner failed to make the necessary showing under *Turner*. *See Newman*, 617 F.3d at 781.

Here, as in *Newman*, Plaintiff fails to allege that the requirement that he admit guilt serves no legitmate penological purpose or is unrelated to rehabilitation. Moreover, the Supreme Court squarely has recognized that "'States . . . have a vital interest in rehabilitating convicted sex offenders' and 'acceptance of responsibility for past offenses' is a 'critical first step' in a prison's rehabilitation program for such offenders.'" *Id.* (quoting *McKune v. Lile*, 536 U.S. 24, 47 (2002).

Plaintiff claims that his admission would be false and it therefore is not relevant to his rehabilitation. However, because Plaintiff entered a plea and was convicted of the offense, the state has no further burden of proving his guilt in relation to his eligibility for rehabilitation programs and parole. *Newman,* 617 F.3d at 781. As a consequence, Plaintiff fails to state a First Amendment claim.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 18, 2010                /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE